UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUSH LITTLE BABY, LLC,

    Plaintiff,

v.                                                         Case No. 8:13-cv-2027-T-17AEP

CHERI CHAPMAN, *et al.*,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Hush Little Baby, LLC ("HLB") initiated this action against Defendants, asserting claims for breach of fiduciary duty, conspiracy to tortiously interfere with economic relations, tortious interference with economic relations, extortion, defamation, unfair trade practices, and theft of property (Doc. 1). After granting in part and denying in part Plaintiff's Motion for Default Judgment as to liability, the district judge referred the matter to the undersigned for determination of damages with respect to Count I, Count II, Count IV, and VI (Docs. 34, 35). For the reasons that follow, and as detailed more fully herein, it is recommended that Plaintiff be awarded damages in the amount of $100,479.38.

    **I.**    **Background**

HLB filed its Complaint alleging claims against a number of Defendants (Doc. 1), but HLB subsequently moved to dismiss with prejudice Defendant Corinne Freesemann; Defendant Happy Baby Solutions, LLC; and Defendant Rensom, LLC, from this matter (Doc. 14). The Court granted HLB's motion (Doc. 15), thereby leaving Defendant Cheri Chapman ("Chapman") as the only remaining Defendant. Following that, HLB moved for a default judgment against Chapman, given Chapman's failure to timely respond to the Complaint (Doc.

16).  In response, Chapman filed a motion to quash service of summons and for dismissal (Doc. 18).  Upon consideration of the motions, the district judge denied Chapman's motion to quash service and for dismissal (Doc. 20) and denied without prejudice HLB's motion for default judgment while directing HLB to file an amended complaint in which it identified all members of HLB and their citizenship for purposes of determining whether diversity jurisdiction existed (Doc. 21).

Subsequently, HLB filed its First Amended Complaint setting forth the basis for the Court's jurisdiction and alleging the following against Chapman: breach of fiduciary duty under Maryland law (Count I), tortious interference with economic relations under Florida law (Count II), extortion under Florida law (Count III), defamation under Maryland law (Count IV), unfair trade practices under Maryland and New York law (Count V), and theft of property under Maryland law (Count VI) (Doc. 23).  Chapman failed to timely respond to the First Amended Complaint, so HLB moved for entry of a clerk's default and renewed its motion for a default judgment (Docs. 29, 31).  After entry of the clerk's default (Doc. 33), the district judge entered an Order granting in part the renewed motion for default judgment as to liability (Doc. 34).  In doing so, the district judge concluded that Chapman was liable for breach of fiduciary duty (Count I),[1] tortious interference with economic relations (Count II), defamation (Count IV), and theft of property (Count VI) but dismissed with prejudice HLB's claims for extortion (Count III) and unfair trade practices (Count V).

After determining liability, the district judge referred the determination of damages as to Counts I, II, IV, and VI to the undersigned for a hearing, if necessary, and issuance of a report and recommendation (Doc. 35).  The undersigned subsequently conducted an evidentiary

---

[1] As noted below, though HLB brought Count I under Maryland law, the district judge concluded that Texas law, rather than Maryland law, applied to such claim (Doc. 34, at 15).

2

hearing regarding the award of damages, during which both Collin Almquist and Haleigh Almquist (collectively, the "Almquists") provided testimony in support of HLB's request for damages. Following the hearing, and as directed by the undersigned, HLB provided supplemental authority and exhibits in support of its request for damages (Doc. 42).

**II.     Discussion**

Following entry of a default, a defendant is deemed to admit a plaintiff's well-pleaded allegations of fact, and, therefore, before entering a default judgment for damages, a district court must ensure that the well-pleaded allegations in the complaint actually state a substantive cause of action and that a substantive, sufficient basis exists in the pleadings for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (citation omitted). To effectuate a default judgment under Rule 55(b), a district court may hold an evidentiary hearing to determine an appropriate amount of damages but is not required to do so, especially where the essential evidence is of record. *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. App'x 908, 911-12 (11th Cir. 2011) (noting that, when considering whether to enter or effectuate a default judgment, the court maintains discretion regarding whether to conduct an evidentiary hearing to determine the amount of damages); *see* Fed. R. Civ. P. 55(b)(2). Notwithstanding, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

As noted above, the district judge granted a default judgment in favor of HLB and against Chapman as to liability for Count I, Count II, Count IV, and Count VI, and dismissed Count III and Count V with prejudice, but left the determination of damages open. In its renewed motion for default judgment, HLB asserted that it suffered $136,350.00 in unliquidated damages (Doc. 29, at 3), citing to a previously filed affidavit as the basis for such request (Doc.

16-4). The affidavit failed, however, to sufficiently establish the basis for the requested award of damages. As a result, the undersigned conducted an evidentiary hearing, wherein the Almquists provided more detailed testimony regarding the damages sought by HLB. Namely, HLB seeks compensatory damages for wages paid to Chapman after she began allegedly stealing clients, lost profits, punitive damages, and attorney's fees.

### A. Counts I and II

Though HLB brought Count I, its breach of fiduciary duty claim, under Maryland law, the district judge concluded that Texas law, rather than Maryland law, applied to such claim (Doc. 34, at 15). Under Texas law, the elements of a breach of fiduciary duty claim include: (1) a fiduciary relationship between the plaintiff and the defendant; (2) the defendant must have breached his or her fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citation omitted). Here, HLB contends it lost the compensation it paid to Chapman while she proceeded to breach her fiduciary duty and lost profits as a result of such breach. According to the Almquists, HLB paid Chapman approximately $9,519.38 in compensation for the period from April 2013, when Chapman began purportedly stealing clients from HLB and thus breaching her fiduciary duty, through June 2013.[2] In Texas, "[f]ee forfeiture is appropriate in cases where an employee breaches his fiduciary duty to his employer." *Cent. Tex. Orthopedic Prods, Inc. v. Espinoza*, No. 04-09-00148-CV, 2009 WL 4670446, at *5 (Tex. App. Dec. 9, 2009). Indeed, "[a]n agent's breach of fiduciary duty is a basis on which the agent may be required to forfeit commissions and other compensation paid or payable to the agent during the period of the agent's disloyalty." *Id.* (quoting Restatement

---

[2] Collin Almquist testified that HLB paid Chapman $4,023.63 in April 2013; $4,019.25 in May 2013; and $1,476.50 in June 2013, for a total of $9,519.38 in compensation.

4

(Third) of Agency § 8.01, cmt. d.2.)). Accordingly, given Chapman's receipt of compensation in the amount of $9,519.38 during the time period in which she was in breach of her fiduciary duty, HLB is entitled to an award of $9,519.38 in damages.

In addition, HLB contends that it is entitled to an award of lost profits suffered as a result of Chapman's breach of her fiduciary duty. In Texas, recovery of lost profits does not require that such loss be susceptible to exact calculation. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 170 (5th Cir. 2010) (citations omitted). Notwithstanding, a party seeking lost profits must demonstrate more than just lost profits; namely, the party must demonstrate the amount of the loss by competent evidence with reasonable certainty. *Id.* (citation omitted). In such circumstances, the proper measure is lost net profits, which, at a minimum, should be based upon objective facts, figures, or data from which an amount of lost profits can be ascertained. *Id.* at 171 (citations omitted).

HLB also seeks lost profits as damages under Count II, its claim of tortious interference with a business relationship under Florida law. The elements of a tortious interference with a business relationship claim in Florida are (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) (citation and internal marks omitted). In Florida, "[a]s a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* at 815.

In this instance, HLB demonstrated that it lost both a contract worth $123,000.00, which translated into $51,000.00 in profits lost for HLB (Hearing Ex. 1), and a total of five new

5

referrals worth $748.00 each, or a total loss of $3,740.00.  Namely, during the hearing, Collin Almquist, as Vice President of HLB, testified that the lost contract was for 24-hour newborn care for a period of four months, which was later extended for an additional four months.[3]  The total contract would have paid out $123,000.00, with the caregiver receiving $72,000.00 and HLB profiting at $51,000.00.  In addition to the lost $51,000.00, Collin Almquist testified that such contract would lead to further renewals and referrals.  According to Collin Almquist, a conservative estimate of the lost profits for each lost referral was $748.00.  Since at least five referrals were lost by the loss of this particular contract (Hearing Ex. 1), the loss totaled $3,740.00 in lost profits relating to the referrals.[4]

Based on the foregoing, and the testimony of Collin Almquist, the undersigned recommends awarding HLB damages for the compensation paid to Chapman during the time period where she breached her fiduciary duty and tortuously interfered with HLB's business relationship and award HLB damages for the lost profits HLB suffered as a result of such breach and tortious interference.  Namely, the undersigned recommends that HLB be awarded $9,519.38 for the fees paid to Chapman and $54,740.00 in lost profits, or a total of $64,259.38 in damages for Counts I and II.

### B. Count IV

Additionally, HLB seeks $25,000.00 in economic damages and $75,000.00 in punitive damages for its defamation claim under Maryland law.  "To sustain a defamation claim,

---

[3] Haleigh Almquist testified regarding an e-mail she received from Dottie Haney ("Haney"), a caregiver who was placed with the family on the contract (Hearing Ex. 2).  The e-mail is significant because it confirms that the contract was renewed and Haney continued with her contract, meaning the profit from the renewal was lost by HLB (Ex. 2).

[4] During the hearing, Haleigh Almquist pointed to Chapman's statement to Brittney Hunt ("Hunt") that Chapman brought in thousands of dollars in new clients for HLB in the months of July and August (*see* Hearing Ex. 4), which would be consistent with the business at that time.

Maryland law requires a showing that: (1) the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." *Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 393 (D.Md. 2014) (citations omitted); *Offen v. Brenner*, 935 A.2d 719, 723-24 (Md. 2007). In Maryland, "a plaintiff may recover economic loss in a defamation suit." *McClure v. Lovelace*, 78 A.3d 934, 952 (Md. Ct. Spec. App. 2013) (citation omitted). In this instance, Haleigh and Collin Almquist testified that Hunt, who worked in the same trade or profession as HLB and operated a children's store, forwarded an e-mail in July 2013 that she received from Chapman. In the e-mail (Hearing Ex. 4), Chapman asserted that HLB made less than $500 in Tampa in a six-month period; HLB was not hiring Hunt sooner because Haleigh Almquist did not want to pay Chapman money owed to Chapman; HLB operated illegally in Virginia, Maryland, Texas, and Washington, D.C.; HLB opened up families for liability; HLB could be prosecuted for tax evasion; and HLB did not verify shot records or liability insurance. According to Haleigh and Collin Almquist, none of those statements were true, *i.e.* HLB made more than $500 in Tampa, HLB did not owe Chapman anything, HLB operated legally in each state identified by Chapman and complied with all laws therein, HLB was not subject to any liability, and HLB maintained all licenses and liability insurance and verified all vaccination records.

Collin Almquist expressed difficulty quantifying the economic damages suffered from Chapman's defamatory statements. Haleigh Almquist testified, however, that HLB relies upon its quality of care for its clients and referrals from clients and other companies, as well as marketing efforts, to increase its business. Haleigh stated that, since Chapman made such defamatory statements to Hunt, who is in the same trade or profession, there should be a strong inference that Chapman also made such defamatory statements to other individuals in the same

7

trade or profession, which would cause significant harm to HLB's reputation in the trade and profession and lead to economic losses. Although not easily quantifiable, HLB estimated it suffered approximately $25,000.00 in economic losses as a result of Chapman's defamatory statements.[5] *Cf. Enovative Techs., LLC v. Leor*, CIVIL NO. JKB-14-3956, 2015 WL 5738256, at *3 (D.Md. Sept. 29, 2015) (concluding that general damages were appropriate in the amount of $1,000,000.00 for the damage to the plaintiff's reputation as a result of the defendant's defamatory statements). Accordingly, the undersigned recommends that HLB be awarded $25,000.00 in economic damages.

HLB additionally seeks an award of punitive damages in the amount of $75,000.00. Such an award is not warranted, however. To recover an award of punitive damages in Maryland, a plaintiff must establish, by clear and convincing evidence, the basis for such award. *Bowden v. Caldor, Inc.*, 710 A.2d 267, 277 (Md. 1998) (citation omitted); *Haeger v. Target Corp.*, Civil Action No. WMN-11-1280, 2012 WL 2923134, at *2 (D.Md. July 17, 2012). Maryland does not set a statutory cap on punitive damages. *See Ziemkiewicz*, 996 F. Supp. 2d at 403 (citation omitted). A plaintiff has no entitlement to an award of punitive damages under Maryland law, and the trier of fact maintains discretion to deny a punitive damages request where the record otherwise would support an award. *Bowden*, 710 A.2d at 277. Punitive damages may only be awarded in Maryland where a "defendant's conduct is characterized by knowing and deliberate wrongdoing." *Le Marc's Mgmt. Corp. v. Valentin*, 709 A.2d 1222, 1226 (Md. 1998) (citations omitted). Indeed, under Maryland law, "with respect to both intentional and non-intentional torts, an award of punitive damages must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to

---

[5] In the Amended Complaint (Doc. 23), HLB alleges that it suffered losses in an amount in excess of $25,000.00 as a direct and proximate result of Chapman's defamation. During the hearing, however, HLB asserted that it sought only $25,000.00 in damages.

injure, ill will, or fraud[,]" and "[p]unitive damages are not recoverable based upon any theory of implied malice, either in the sense of gross negligence or in the sense of inferring malice from an element of the tort." *Bowden*, 710 A.2d at 276 (citations, quotation marks, and internal marks omitted).

With regard to defamation claims, punitive damages are permitted only when a plaintiff demonstrates that the defendant had actual knowledge that the alleged defamatory statement was false. *Le Marc's Mgmt. Corp.*, 709 A.2d at 1226; *see Bowden*, 710 A.2d at 276 ("For example, in a defamation action, punitive damages are not recoverable based upon ill will, spite, or an intent to injure; instead, to recover punitive damages, the plaintiff must establish that the defamatory falsehood was made with actual knowledge that it was false."). In this instance, HLB failed to establish clear and convincing evidence warranting an award of punitive damages. Though, by virtue of the default and entry of default judgment, Chapman is deemed to have admitted the well-pleaded allegations in the Amended Complaint, the allegations do not establish a substantive, sufficient basis for an award of punitive damages. The pertinent allegations in the Amended Complaint pertaining to the defamation claim include the following:

> 35. Defendant Cheri Chapman, in her official capacity, and in her personal capacity, upon information and belief, has been contacting Florida providers of care and made false statements about Plaintiff that are ajurious against trade or profession.
>
> 36. The actions of the Defendants has damaged the relationship between Plaintiff HLB, its business partners, caregivers, and its customers.
>
> \*\*\*
>
> 52. Defendant Cheri Chapman's actions in maligning Plaintiff with clients, referral agencies, and business associates was tantamount to defamation.
>
> 53. As a direct and proximate result of such defamation, Plaintiff has suffered losses in an amount to be determined but in excess of $25,000.00.

>54.     Because the defamation was malicious, Defendant Cheri Chapman is also liable to Plaintiff for Plaintiff's reasonable attorney fees and punitive damages in an amount sufficient to deter such activities in the future.

(Doc. 23).  None of the allegations in the Amended Complaint establish that Chapman knew any of the defamatory statements were false.  The conclusory allegation stating that "the defamation was malicious" does not provide clear and convincing evidence that Chapman had actual knowledge that the alleged defamatory statements were false.  *Bowden*, 710 A.2d at 276; *Le Marc's Mgmt. Corp.*, 709 A.2d at 1226.

Similarly, the testimony at the hearing failed to provide clear and convincing evidence in support of the punitive damages award.  Haleigh Almquist testified that Chapman handled all client communication, team member matching to clients, and team member correspondence, but Haleigh Almquist did not identify what information such job duties would provide to Chapman that would demonstrate that Chapman had actual knowledge of her statements' falsity.  Neither Haleigh nor Collin Almquist offered any testimony demonstrating Chapman's knowledge that the alleged defamatory statements were false.  They simply stated that Chapman's statements were false.  As noted above, before entering a default judgment for damages, a district court must ensure that a substantive, sufficient basis exists in the pleadings for the particular relief sought.  *Tyco Fire & Sec., LLC*, 218 Fed. App'x at 863.  Indeed, this Court has an obligation to assure that a legitimate basis exists for any damage award it enters.  *Anheuser Busch, Inc.*, 317 F.3d at 1266.  Since HLB failed to demonstrate, by clear and convincing evidence, a basis for an award of punitive damages, the undersigned recommends that HLB not be awarded punitive damages.  *Cf. Bowden*, 710 A.2d at 277 (noting that the trier of fact maintains discretion to deny a punitive damages request where the record otherwise would support an award).

### C. Count VI

Finally, HLB requests damages for its claim for theft of property under Maryland law. As the district judge stated, to the extent that HLB demonstrates that its proprietary documents include trade secrets, Plaintiff can seek the amount of the actual loss caused by Chapman's misappropriation, the unjust enrichment caused by the misappropriation that was not taken into account in computing the actual loss, or a reasonable royalty for the unauthorized disclosure or use of a trade secret (Doc. 34, at 28-29). *See* Md. Code Ann., Com. Law § 11-1203. Maryland defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Md. Code Ann., Com. Law, § 11-1201(e). During the hearing, Collin Almquist testified that Chapman deleted HLB's knowledge management database on its Google drive of HLB's past clients, active contracts, pending contracts, and client correspondence. The database captured correspondence between and among active, pending, and previous caregiver positions used for promotion, marketing, and tracking clients seeking care from one of the caregivers. HLB used password-protected software for this database to safeguard and preserve records as confidential. Collin Almquist stated that the records contained in the database were proprietary because such records contained unique, original content generated by HLB over a period of years spent refining processes for correspondence and caregiver profiles, and the other confidential information contained in the database, including all of the branding documents, were unique to HLB and were created by HLB. According to Collin Almquist, HLB informed Chapman that all the documents contained in the database were confidential and proprietary. Given

11

Chapman's understanding of the confidential and proprietary nature of the documents contained within the database, HLB permitted Chapman to access the database with such understanding.

Haleigh Almquist elaborated regarding the database, stating that the two-password component to access the files on the database required an authorized user to log into the master HLB account with a password and then type in an HLB e-mail address and another password to access the files. According to Haleigh Almquist, Chapman received access to client files and team member files, which constituted 75% of the content management of the database, and only Haleigh Almquist and Chapman could access the files. The database constituted a vital part of HLB's content management because it included all of the client files, client leads, and team member information. When Haleigh Almquist logged in the day after HLB terminated Chapman's employment, all of the files were gone and HLB could never recover the files.

As described, HLB established that its database constituted a trade secret under Maryland law. Namely, the database was a compilation of client files, client leads, team member information, and other historical data deriving independent economic value from not being generally known or being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use. Further, by requiring a two-password login process and limiting access to only authorized users, the database was the subject of efforts, reasonable under the circumstances, to maintain its secrecy. Accordingly, HLB is entitled to an award of damages stemming from the theft of its confidential and proprietary information.

With respect to damages, Collin Almquist estimated that the average profit from each client lost equated to $748.00. Collin Almquist stated that the contracts missed as a result of Chapman's theft of the information and documents contained in the database included the lost referrals and the clients who previously applied for care that HLB subsequently lost track of

because of the theft. Collin Almquist stated that the damages flowing from the deletion of the database totaled $11,220.00. He offered this estimate based on the loss of fifteen contracts, which equaled the average of the client applications per month during this time period, at $748.00 per contract.[6] Based on the foregoing, therefore, the undersigned recommends that HLB be awarded $11,220.00 in damages for the theft of its database.

### D. Attorney's Fees

In its supplemental filing, HLB abandoned its claim for an attorney's fee award (Doc. 42, at 4), finding no legal basis for such an award. Accordingly, the undersigned recommends that no attorney's fees be awarded to HLB.

### III. Conclusion

For the foregoing reasons, and as explained above, it is hereby

RECOMMENDED:

1. HLB be awarded damages in the amount of $100,479.38, as follows:

    a.  $64,259.38 for Counts I and II;

    b.  $25,000.00 for Count IV; and

    c.  $11,220.00 for Count VI.

IT IS SO REPORTED in Tampa, Florida, on this 28th day of June, 2016.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

---

[6] Again, as noted *supra* at n.4, Chapman's statement to Hunt indicated that Chapman brought in thousands of dollars in new clients for HLB in the months of July and August (*see* Hearing Ex. 4), which Haleigh Almquist stated would be consistent with the amount of business at that time.

13

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


cc:   Hon. Elizabeth A. Kovachevich
      Counsel of Record